IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AIR LIQUIDE AMERICA CORPORATION,
and MEDAL LP,
          Plaintiffs,

    vs.                                                         CIVIL NO. 97-1536 LH/LFG

MG NITROGEN SERVICES,
INC. and MG GENERON, INC.,

          Defendants.

## MEMORANDUM AND ORDER DENYING MOTION
## TO DISQUALIFY GEORGE H. MEDLEY, JR.

      THIS MATTER is before the Court on Plaintiffs' Motion to Disqualify George H. Medley, Jr. as MG's expert witness. The motion [Doc. 113], response and reply were simultaneously filed in accord with the district's motion practice rules. Oral argument is not necessary.

      Defendants MG Nitrogen Services, Inc. and MG Generon, Inc. ("MG") designated George H. Medley, Jr. ("Medley") as their testifying expert. Pursuant to the terms of the parties' confidentiality agreement, MG gave Plaintiffs, Air Liquide America Corporation and Medal L.P. ("Air Liquide"), notice of the proposed expert. Air Liquide seeks to disqualify Medley and prevent him from testifying in this case.

      Air Liquid contends that prior to filing suit, Air Liquide, through its counsel Robert Touslee ("Touslee"), was investigating issues relevant to the validity of the 650 patent, the subject of the present lawsuit. As part of Air Liquide's investigation, Touslee spoke to Archie Piehl of Bohen Tools, Air Liquide's subsidiary, and learned that Medley was a foam and air drilling expert. Touslee

called Medley to discuss matters relating to the 650 patent. The exact nature of the call is in dispute.

Touslee testified on April 7, 1999 as follows:

> QUESTION: Mr. Touslee, do you recall discussing any patent issues with George Medley?
>
> ANSWER: At the time he was with Maurer Engineering?
>
> QUESTION: Yes.
>
> ANSWER: Yes, I do.
>
> QUESTION: Did those questions relate to the 650 patent?
>
> ANSWER: Yes, they did.
>
> QUESTION: Did you engage Mr. Medley to undertake any activities with respect to the 650 patent on behalf of Air Liquide?
>
> ANSWER: What do you mean by engage?
>
> QUESTION: Hire him to do some work for Air Liquide.
>
> ANSWER: I asked him if given the circumstance of this issued patent, which I explained to him, I also explained to him what prior art was and what the critical date was and whether he would be willing to furnish and had any publications that would be relevant to the validity of this patent. He was referred to me by Mr. Archie Piehl of our subsidiary Bohen Tools as a foam and air drilling expert, so I was asking him for prior art documents specifically related to this problem of the 650 patent.
>
> QUESTION: Did he provide you any prior art references?
>
> ANSWER: Yes, I believe he did.
>
> QUESTION: Do you recall what references he provided?
>
> ANSWER: No, not specifically.

> QUESTION: Did you discuss the content of the prior art references he provided with him?
>
> ANSWER: I don't recall.
>
> QUESTION: Other than provide some prior art references to you, did Mr. Medley do anything else for you with respect to the 650 patent?
>
> ANSWER: Not that I recall.

Medley's recollection of the contact indicates an even more limited encounter. He testified as follows:

> 5. Although I could not recall the name of the person who called me, I do recall receiving a telephone call from an Air Liquide employee in late March or April of 1995 while I was employed by Maurer Engineering. The person wanted to obtain articles regarding the use of nitrogen in drilling. After reviewing the portion of Mr. Robert Touslee's deposition, it is my understanding and belief that he is the person who called me in 1995.
>
> 6. Mr. Touslee mentioned somebody was trying to get or somebody had a patent involving the use of nitrogen in drilling. I was never provided with a copy of the patent in question, and this is the only phone call I recall receiving from anyone at Air Liquide on this matter.
>
> 7. I provided Mr. Touslee with the titles of three articles as indicated on my calendar. This was done via facsimile on or about April 10 or 11, 1995. At this time, I do not recall the titles of the articles provided to Air Liquide.
>
> 8. I have not had any other contact with Air Liquide other than the one short telephone call described. They did not provide me with any confidential information. I was not provided with any type of contract for the work, and did not sign any sort of confidentiality agreement. I was never informed that any of the information provided to me was confidential, nor did I believe, by its nature, that the information was confidential. None of the information I provided to Air Liquide was confidential.

9. I was not paid for the work performed. The reasons I even performed the search were: (1) it was a referral from Archie Piehl of Bohen Tool Company, a business acquaintance of one of our potential clients at the time; (2) the possibility of obtaining technical information from Air Liquide, although this was a low priority and did not occur. I knew the person who called from Air Liquide was not an engineer and would not be likely to have the desired technical information; and (3) since I was in the beginning stages of producing a manual for Maurer Engineering that would cover underbalanced drilling techniques including air drilling variations, I figured I could always use the results of my search in the manual.

When a party seeking disqualification of an expert is able to establish that it had an objectively reasonable belief that it had a confidential relationship with the expert, and when the party seeking disqualification has disclosed confidential or privileged information to the expert, the court may order that the expert be disqualified. Koch Refining Co. v. Jennifer L. Boudreaux MV, 85 F.3d 1178 (5th Cir. 1996); Cordy v. Sherwin-Williams Co., 156 F.R.D. 575 (D. N.J. 1994). In determining whether there is a confidential relationship, the Court will consider whether there are a "series of interactions, which have more likely than not coalesced to create a basic understanding of the [parties'] modus operandi, patterns of operation, decision-making process and the like." Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588, 591 (D. Minn. 1986).

Here, Air Liquide failed to demonstrate the "series of interactions" typically present in a confidential relationship. It is undisputed that there was a single telephone contact between Touslee and Medley on March 1995. Because art references were discussed in that telephonic conference, Medley faxed a list of references to Touslee shortly thereafter. There was no follow-up call or communication of any kind. Touslee sent no follow-up correspondence. He did not ask for or obtain any advice from Medley. He discussed no matters relating to trial strategy or tactics. He never told Medley that their discussion was confidential, and, Medley denies receipt of any confidential

information from him.  Touslee did not offer to pay Medley, did not submit any proposed retention or confidentiality agreement.  Indeed, Touslee did not even acknowledge receipt of the list of references.

The Court is hard pressed to accept Air Liquide's position that it had an objective and reasonable belief of a confidential relationship between it and Medley.  There was no series of interactions Medley had to believe that there was a confidential relationship established.  No proprietary or confidential information was exchanged.  Medley states he neither received or learned anything of a confidential nature in his one call from Touslee.

Under the circumstances described, Air Liquide's motion fails to satisfy both prongs of the tests announced in <u>Koch Refining Co. v. Boudreaux</u> and <u>Cordy v. Sherman-Williams Co.</u>  While Air Liquide may have believed that its contact with Medley was confidential, nothing in the discussion warrants the Court to conclude that such a belief was objectively reasonable.

Air Liquide's motion to disqualify is not well-taken and will be denied.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEYS FOR PLAINTIFFS:
J. Douglas Foster, Esq.
Marc L. Delflache, Esq.
B. D. Daniel, Esq.
Gregory M. Hasley, Esq.

ATTORNEYS FOR DEFENDANTS:
Phil Krehbiel, Esq.
Carol Lisa Smith, Esq.
Gregory W. Carr, Esq.