# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

AIR LIQUIDE AMERICA
CORPORATION and MEDAL L.P.,

      Plaintiffs,

      vs.                                                                                                                          No. CIV 97-1536 LH/LFG

MG NITROGEN SERVICES, INC. and MG
GENERON, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Second Motion to Dismiss and Supporting Memorandum (Docket No. 20), filed April 3, 1998, and Defendants' Motion for a Status Conference and Memorandum in Support Thereof (Docket No. 83), filed March 22, 1999. The Court, having considered the pleadings submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds that the Motion to Dismiss is well taken in part and will be **granted in part and denied in part** and that the Motion for a Status Conference is well taken and will be **granted**.

### INTRODUCTION

Plaintiffs have filed suit seeking to correct the identified inventor on United States Patent No. 5,388,650 (hereafter the '650 patent), a declaration that the Defendants have violated federal and state antitrust laws, and infringement remedies. The Defendants make two arguments in support of

their Motion to Dismiss. First they argue that the Plaintiffs fail to state federal and New Mexico antitrust claims for which relief can be granted, that the Plaintiffs' state law conversion claim similarly fails to state a claim upon which relief can be granted, and that the Plaintiffs do not have standing to assert their patent infringement claims. Secondly, the Defendants argue that this Court lacks personal jurisdiction over them. Since the Court held a hearing on this motion, however, the Defendants have withdrawn this portion of their motion, have subjected themselves to the personal jurisdiction of this Court, and have filed an Answer to the Complaint. (*See* Defs.' Notice Sub. Jur. Court With. Pt. Mot. Dis. (Docket No. 59), filed October 20, 1998.) Therefore, that portion of the motion will be denied.

## PLAINTIFFS' FEDERAL AND STATE ANTITRUST CLAIMS

Defendants first argue that the Plaintiffs fail to state a claim for federal and state antitrust violations because the Plaintiffs do not allege that the '650 patent was wrongfully issued, rather they allege that it was issued to the wrong entity. In other words, rather than asserting that the Defendants are creating an illegal monopoly by excluding others from the marketplace through the use of an illegitimate patent, Plaintiffs merely assert that the Defendants are excluding others through the use of a legitimate patent which does not rightfully belong to them. In fact, as the Defendants point out, Plaintiffs allege that they should have been issued the patent and that they are its equitable owner. (*See* 2nd Amend. Compl. ¶¶ 1, 8-29, 40-43, 62-77 (asserting equitable title belongs to Plaintiffs and seeking judicial correction of identified inventor and transfer of ownership of patent to Plaintiff).) Arguing that a valid but wrongfully assigned patent cannot create an illegal monopoly in violation of the antitrust laws, Defendants seek to have the antitrust claims in Counts II-V of the Second Amended Complaint dismissed.

Defendants focus on the Seventh Circuit's opinion in *Brunswick Corp. v. Riegel Textile Corp.*, as authority for their position. 752 F.2d 261 (7th Cir. 1984). In *Brunswick*, Judge Posner observes that obtaining a patent by fraud—as the Plaintiffs allege the Defendants have done here—"can, but does not always, violate Section 2 of the Sherman [Antitrust] Act." *Id.* at 264 (citing *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172 (1965)) (other citations omitted)). The Supreme Court recognized the antitrust impact an invalid patent can have when it held that a fraudulently obtained patent can create an illegal monopoly in violation of Section 2 of the Sherman Antitrust Act. *See Walker Process*, 382 U.S. at 179.

The critical factor for this type of violation, concludes Judge Posner, is that the patent be *invalid* and not merely improperly assigned. *See Brunswick Corp.*, 752 F.2d at 264-65. Obviously, a valid patent "entitles the patentee to prevent others from making or selling [a] patented product or . . . using [a] patented production process." *Id.* at 264. Thus, to state a claim under the Sherman Act, "[t]he invention sought to be patented must not be patentable." *Id.* at 265. As Judge Posner states in an oft quoted passage:

> If the invention is patentable, it does not matter from an antitrust standpoint what skullduggery the defendant may have used to get the patent issued or transferred to him. The power over price that patent rights confer is lawful, and is not greater than it otherwise would be just because the person exercising the rights is not the one entitled by law to do so . . . . [F]or a fraud to be material in an antitrust sense the plaintiff must show that *but for* the fraud no patent would have been issued to anyone.

*Id.* (emphasis added). Here, as in *Brunswick*, the Plaintiffs' chief complaint is that the '650 patent should have been issued to them, not to the Defendants. (*See e.g.* 2nd Amend. Compl. ¶ 42 (alleging that Paul Allan and Rodney Huskey are true and correct inventors who had "an undivided interest in all right, title and interest in the '650 patent" which was assigned to Plaintiffs"); ¶ 38 (alleging that the Defendants "have invoked the *ill-gotten* '650 patent . . .") (emphasis added).) As Judge Posner

notes, however, the alleged theft of what is otherwise a perfectly valid patent "creates no monopoly power; it merely shifts a lawful monopoly into different hands. This has no *antitrust* significance . . . ." *Id.* at 266 (emphasis added).

The Plaintiffs argue that the Defendants' reliance on Judge Posner's reasoning is misplaced. They correctly note that the decision is not one of this Circuit and then argue that the relevant portion of the opinion is *dicta* and that it does not conform to applicable Supreme Court authority. (*See* Pls.' Resp. at 28.) However, the rationality of Judge Posner's logic cannot be denied. Moreover, despite Plaintiffs' assertions to the contrary, Tenth Circuit and Federal Circuit precedence is in accord with the *Brunswick* opinion and those decisions are in accord with Supreme Court precedence.

Plaintiffs attempt to take advantage of some slightly imprecise language in the *Walker Process* decision to suggest that *any* fraudulent or deliberately inaccurate action taken to illicitly obtain a patent would have antitrust implications. (*See* Pls.' Resp. at 30.) Neither Tenth Circuit nor Federal Circuit case law would support such a broad reading of *Walker Process*. Moreover, Plaintiffs' reliance on the pre-*Walker Process* case of *Kobe, Inc. v. Dempsey Pump Co.*, is inappropriate. 198 F.2d 416, 424 (10th Cir. 1952). The *Kobe* court merely concluded that one could state an antitrust claim by alleging misuse of patents—many of which had expired, making them an invalid basis for an infringement action—to publicly and inaccurately suggest legal domination of a market. *Id.* The court found that alleging the use of unjustified infringement actions to enforce invalid or inapplicable patents did state an antitrust counter-claim. *Id.* This holding does not address the issue presented here, nor could this Court find that it modifies the *Walker Process* Supreme Court opinion which was issued some thirteen years later.

More significantly, however, in analyzing a *Walker Process* antitrust claim, the Federal Circuit has explicitly held that "whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998). Thus, this question is governed by Federal Circuit precedent and in this instance, Tenth Circuit decisions, like Seventh Circuit decisions, are merely persuasive, not conclusive, authority.

In *Nobelpharma*, the fraudulent conduct found to be material was a failure to reveal that the patented invention may have been in the public domain at the time of the application. *Id*. at 1072. Although the issue was not explicitly discussed, the *Nobelpharma* opinion, taken with other pronouncements of the Federal Circuit on this subject, suggest that it would agree with Judge Posner that to state a *Walker Process* antitrust claim, the alleged fraud must result in an invalid, not merely improperly assigned, patent. For example, in *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, the Federal Circuit held that *Walker Process* fraud is distinct from fraud as a common law cause of action. *See American Hoist*, 725 F.2d 1350, 1363-64 (Fed. Cir. 1984). To state a *Walker Process* claim, the alleged fraud must be material "in the anti-trust sense." That is, a "Section 2 Sherman Antitrust Act claimant must show that *but for* the fraud no patent would have been issued to anyone." *Rohm and Hass Co. v. Dawson Chemical Co.*, 635 F.Supp. 1211, 1221 (S.D. Tex. 1986) (emphasis added).

The Federal Circuit has repeated this often, and its mantra has resonated with the district courts as well. *See American Hoist*, 725 F.2d at 1366; *Litton Indus. Products, Inc. v. Solid State Systems, Corp.,* 755 F.2d 158, 166 (Fed. Cir. 1985) (holding "[m]ateriality is shown if 'but for' the misrepresentation, the patent would not have issued) (citations omitted); *Baxa Corp. v. McGaw, Inc.*,

996 F.Supp. 1044, 1049 (D. Colo. 1997) (holding "fraud on patent office must have been material; that is, the plaintiff must show that but for the fraud, the patent would not have been issued") (citing *American Hoist & Derrick Co.*, 725 F.2d at 1364).  Likewise, this position resonates in prominent treatises and articles.  *See e.g.* 8 ERNEST BAINBRIDGE LIPSCOMB III, LIPSCOMB'S WALKER ON PATENTS § 28:41 at 337 (2nd ed. 1989) (citing Federal Circuit in *American Hoist*, 725 F.2d 1350, for proposition that fraud must be material in the antitrust sense that is "that but for the fraud no patent would have issued to anyone"); 7 LIPSCOMB'S WALKER ON PATENTS § 26:8[A] at 463-64 (discussing various "but for" standards for materiality); Eunice A. Eichelberger, Annotation, *Fraud in Patent Procurement as Violation of § 2 of Sherman Act (15 USCS § 2)*, 65 A.L.R. FED. 408, 422 (1983) (stating that in the antitrust context to establish"fraudulent procurement of a patent from Patent Office . . . it must be averred and shown that the patent would not have issued but for the fraud") (citation omitted).  The Court therefore holds, that to have stated a *Walker Process* antitrust claim, the Plaintiffs would have had to allege that *but for* fraud committed by the Defendants on the Patent and Trademark Office, no patent would have issued.

Here, the Plaintiff has only alleged that the Defendants misrepresented who the inventor of the patented process was, which allegedly resulted in the issuance of a valid patent to an entity without a valid interest in that patent.  (*See e.g.* 2nd Amend. Compl. ¶¶ 40-43.)  Given these allegations, it is certainly proper to seek correction of the inventorship, as sought in Count One. However, unless Plaintiffs wish to have the patent invalidated in its entirety and are able to allege that but for the fraud no patent would have issued, they cannot state a *Walker Process* antitrust claim nor

can they state a state law antitrust claim.[1] Therefore, the Court will grant the motion to dismiss Counts Two through Five of the Plaintiffs' Second Amended Complaint.

**PATENT INFRINGEMENT CLAIM**

Using logic similar to their arguments on the antitrust claims, Defendants assert that the Court must also dismiss Plaintiffs' patent infringement claim in Count Six. Plaintiffs admit that they do not hold the legal title to the '650 patent, but assert that they are the equitable owner of the patent. (*See* Pls.' Resp. at 20.) Defendants seize on this distinction and argue that Plaintiffs do not have standing to assert any claim for infringement. (*See* Defs.' Mem. Supp. Mot. Dis. at 11.) Plaintiffs concede that they must have legal title to seek remedies at law under the patent infringement statute, they assert, however, that they are only seeking a "declaratory judgment that Defendants have willfully infringed Plaintiffs' equitable interest in the '650 patent." (*See* Pls.' Resp. at 20.) Essentially, the Plaintiffs seek to do an end run around the legal title requirement and the bar on legal remedies by seeking only a declaratory judgment and limiting their claim to damages to the period after inventorship is corrected. (*See* Pls.' Surreply at 4.)

Plaintiffs are correct that "a federal district court has jurisdiction to determine a 'claim for infringement,' asserted by an adjudged equitable title holder, as a prerequisite to awarding *equitable* relief for that infringement." *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 1580 (Fed. Cir. 1991); *see also Heidelberg Harris, Inc. v. Loebach*, 145 F.3d 1454, 1458 (agreeing that the *Arachnid*

---

[1] As the Defendants observe, Section 57-1-15 of the New Mexico Statues requires this Court to interpret the New Mexico antitrust act "in harmony" with federal precedence. *See Smith Machinery Corp. v. Hesston, Inc.*, 102 N.M. 245, 249, 694 P.2d 501, 505 (1985). Therefore, the Court will treat the New Mexico claims as state law versions of the federal *Walker Process* claims. *See* N.M. STAT. ANN. § 57-1-15 (requiring that the "'in harmony' . . . construction . . . be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices").

holding "expressly recognizes recission as a remedy and acknowledges the right of an aggrieved party to obtain full redress for pre-title infringement by way of injunction, accounting, declaration of trust, or other forms of equitable relief"). This jurisdiction, however, is not granted for a claim of patent infringement at law, it is jurisdiction over the equitable claim for rescission of the assignment of the patent. *Id*. Thus, the question presented is whether Count Six states an equitable claim seeking rescission of the assignment of the patent or a legal claim under the patent infringement statute for damages.

Frankly, Plaintiffs' complaint is not clear in this regard. All of the language in Count Six, save the last sentence in paragraph 67, suggest that Plaintiffs are seeking remedies at law under the patent infringement statute. However, paragraph 67 plainly states that the Plaintiffs "seek a declaratory judgment that the Defendants have willfully infringed Plaintiffs' equitable interest in the '650 patent." (2nd Amend. Compl. ¶ 67.) Adding to the confusion, in their prayer for relief Plaintiffs seek a declaration that the "Defendants are *infringing*, and will continue to *infringe*, U.S. Patent No. 5,388,650 as originally issued and subsequently reallowed following reexamination . . . ." (*Id*. ¶ h (emphasis added).) In an effort to achieve greater clarity, the Court will dismiss Count Six and its related prayers for relief to ensure that there are no claims made or damages sought for patent infringement *at law*. However, the Court will permit the Plaintiffs to amend the complaint again, if they can state an equitable claim seeking recission.

### CONVERSION CLAIM

Finally, the Defendants seek to have Count Seven dismissed arguing that because the Plaintiffs lack legal title to the patent, they cannot state a claim for conversion and that even if they could state a claim, it would be preempted by the federal patent statute. The Court concludes that the state law

conversion claim is preempted by section 256 of the Patent Act, and therefore finds that it does not need to consider the Defendants' other arguments.

Generally state law tort claims are not preempted by federal patent law, "provided the state law cause of action includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998). The Federal Circuit has concluded that to be preempted by the federal patent law, the state tort must clash with the objectives of patent law. *Id.* at 1474 (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480 (1974) (other citations omitted)). In that vein, the Federal Circuit has explicitly held that state courts are "without power to invalidate an issued patent." *Jacobs Wind Elec. Co. v. Florida Dep't. of Transp.*, 919 F.2d 726, 728 (Fed. Cir. 1990). Moreover, the Circuit found that "a state tort action for abuse of process could not 'be invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings in the Patent and Trademark Office.'" *Dow Chemical Co.*, 139 F.3d at 1476 (quoting *Abbott Laboratories v. Brennan*, 952 F.2d 1346, 1355 (Fed. Cir. 1991)). Thus, in *Abbott Laboratories* the Circuit found that the state law claim for abuse of process would result in "an inappropriate collateral intrusion on the regulatory procedures of the PTO . . . contrary to Congress' preemptive regulation in the area of patent law." 952 F.2d at 1357 (citations omitted).

Here, as in *Abbott*, the state law claim is "based entirely upon bad faith misconduct before the PTO." *Dow Chemical Co.*, 139 F.3d at 1477. Plaintiffs' conversion claim is based upon their alleged equitable ownership of the '650 patent and the allegations of fraud by the Defendants before the PTO. To adjudicate the conversion claim, the Court would have to examine the patent application and the allegations of fraud before the PTO. Thus, the conversion claim—at least under the facts alleged in

the Complaint—would result in "an inappropriate collateral intrusion on the regulatory procedures of the PTO . . . contrary to Congress' preemptive regulation in the area of patent law." *Abbott Laboratories*, 952 F.2d at 1357 (citations omitted). Given this conclusion, the Court must dismiss the state law claim for conversion as preempted by federal patent law. To hold otherwise, would permit plaintiffs to bypass the traditional notion that a "patent grant is within the exclusive purview of federal law" and allow adjudication of the validity of patent grants under the auspices and standards of state law. *See Abbott Laboratories*, 952 F.2nd at 1355 (citing *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 n. 7 (1964)). Such action would clearly violate the supremacy clause and congressional intent.

**MOTION FOR STATUS CONFERENCE**

The Defendants have also filed a remarkably voluminous motion for a status conference seeking clarification and/or expansion of discovery and an opportunity to discuss the feasibility of having a special master appointed to resolve some of the issues in this case. Although the Plaintiffs do not oppose the conference itself, they apparently felt compelled to file an equally profuse response explaining in great detail why they disagreed with the Defendants' basis for requesting the conference. Such extensive discussion over whether to hold a status conference is unnecessary and the Court does not wish to reopen that dialogue. Nonetheless, the Court is cognizant that its ruling on the motion to dismiss may affect the need for the status conference. Therefore, the Court will grant the motion for a status conference and the Clerk is directed to schedule the conference forthwith. However, should the parties conclude that this conference is no longer necessary, they should contact the Court's Chambers promptly and it will be vacated.

**IT IS, THEREFORE, ORDERED** that Defendants' Second Motion to Dismiss and Supporting Memorandum (Docket No. 20), filed April 3, 1998, is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that the Defendants' motion to dismiss on personal jurisdiction grounds is **denied as moot** as the Defendants have consented to personal jurisdiction.

**IT IS FURTHER ORDERED** that Counts Two through Seven of the Second Amended Complaint are dismissed. The Plaintiffs are granted leave file a motion seeking to amend their Complaint in order to restate the claim in Count Six as a purely equitable claim seeking exclusively equitable remedies.

**IT IS FINALLY ORDERED** that the Defendants' Motion for a Status Conference (Docket No. 83), filed March 22, 1999, is **granted** and the Clerk is directed to schedule a status conference forthwith.

_____
**UNITED STATES DISTRICT JUDGE**